RICHARD McGEE v. JOHN McGEE ET AL.

*Deed—Delivery.*

The question involved in this case is whether or not certain
deeds, executed by a father shortly before his death to cer-
tain of his children, were delivered during his lifetime so as
to make them operative. And it is held that the non-delivery
of the papers is established by a fair preponderance of evi-
dence. Only questions of fact are involved, and an examina-
tion of the opinion is essential to a clear understanding of
the case.

Appeal from Kent. (Adsit, J.) Argued April 19, 1895.
Decided June 4, 1895.

Bill to compel the delivery of certain deeds and to quiet
title. A portion of the defendants filed an answer in
the nature of a cross-bill, asking that said deeds to com-
plainant and also certain deeds executed to their code-
fendants be declared void. All of the defendants appeal.
Decree reversed, and prayer of cross-bill granted. The
facts are stated in the opinion.

*Maher & Salsbury,* for complainant.

*John M. Mathewson* and *M. H. Walker,* for defendants.

GRANT, J. Bernard McGee died March 15, 1893, aged
70 years. He left surviving him his widow, Elizabeth,
and six children, whose names, in the order of their birth,
are as follows: James, Mary Bergin, John, Rose Ann
Bergin, Richard, and George. He had been ill for some
time, and early on the morning of February 18, previous
to his death, he sent for Mr. Hicks, an attorney, to come
and draw papers designed to accomplish the distribution

of his property among his children. He evidently desired to avoid proceedings in the probate court for the settlement of his estate, and so stated at that time. He owned several farms, including the homestead where he lived; a lot, upon which was a store, in the village of Lowell; about $9,000 of mortgages; and about $9,000 of other personal property. Mr. Hicks arrived at his house early in the morning, and spent the day in talking over with him the disposition he desired to make, and in drawing some deeds, assignments of mortgages, and a discharge of one mortgage of $2,000 upon land owned by his daughter Mary Bergin. A deed was drawn up, and signed by himself and his wife, conveying the homestead, 401 acres, and another deed, conveying another farm, near by, of 120 acres, to Richard; also another deed, conveying another farm to George, upon which he took back a mortgage of $3,000; and still another, of the lot in Lowell, to Rose Ann Bergin. He also drew assignments of the mortgages to his wife. At the same time Richard gave a bond and executed a mortgage back upon the homestead to secure the support of his wife, who was an invalid, so crippled with rheumatism as to be unable to take care of herself. He made no disposition of his personal property, and said he would postpone that until another time. He steadily grew worse, and, although his attention was called to the fact that he had not disposed of this property, he failed to do it. His children were present at that time, and George and Rose took their deeds away with them. The deeds to Richard and the assignments of the mortgages were placed together in an envelope, and left upon the table. Mr. McGee told Richard to take the papers, and put them in his (the father's) bureau drawer, in an adjoining room, where he kept his papers. Nothing was said about the delivery of these papers. They were left with and remained under the control of Mr. Bernard McGee until the night of the 28th of February. On the previous day Father Crumley, the Catholic priest, had a conversation with Mr. McGee about the disposition of his

property, telling him that there was dissatisfaction about the division of his real estate. On the night of the 28th Richard took the papers from his father's bureau to his own room upstairs, and locked them up in his own bureau. Shortly before his death, it is claimed by the defense— and their evidence strongly supports the claim—that Mr. McGee asked John, who was sitting up with him, to bring these papers from his bureau in the adjoining room; that he searched for them, but could not find them. Afterwards John took the deeds from Richard's bureau. On the day of Mr. McGee's death Richard looked for them, and found they were gone. John, a day or two thereafter, informed Richard that he had taken them, claiming they were not delivered, and he had no right to them. Richard thereupon filed this bill, praying for the surrender of the deeds by John to him, for a correction of a mistake in the description of the land, and that the defendants be decreed to have no interest therein. The defendants George, Mary Bergin, and Rose Ann Bergin answered, alleging—

"That Mr. McGee was very weak and sick unto death, and sent for Mr. Hicks, intending to make a final division of his property among his children in such manner that it would be unnecessary for him to make a will, or to have his estate administered; that he made and delivered some papers to these defendants, but that, owing to his weak, disabled, and exhausted condition, he gave out, and was unable to and did not complete the business; that the same never was completed, and that he died without having delivered the deeds or the assignments of mortgages, and without having made any disposition of his personal property."

The defendants John and James filed a similar answer, and further alleging that Mr. McGee "was physically and mentally incompetent to make a valid and legal distribution of his property."

The first and principal question to be decided pertains to the delivery of these papers. The purpose of Mr. McGee in avoiding an administration upon his estate was

not accomplished, and this he must have known if his mind was sufficiently clear to comprehend this purpose. We think it clear that he intended to complete it, but whether his failure to do so was the result of his physical and mental condition, or of the hope that he might recover, we need not discuss. The deeds and assignments were not delivered on the 18th, and we think it apparent from the evidence of what occurred on that day that he did not intend to then deliver them. Nothing was said about delivering them, and they were retained in his possession. In this there is a substantial agreement in the evidence. Richard's wife testified that on the 28th of February—evidently after the conversation between Father Crumley and Mr. McGee—she heard Mr. McGee say to Richard—

"I say, take care of your papers, and take care of your mother's papers; and if you don't take my advice you will be sorry for it."

Richard himself testifies that on the 18th, after the deed of the Devine place, 120 acres, which was the last paper made and signed that day,—

"Father spoke up after, and said he did not know, he did not intend, or he did not think, that he would deed the Devine place to me. Father told Mr. Hicks to leave some blank deeds; that he might call a justice, and change the Devine place."

He testified to the same statement of his father to him as testified by his wife, and that he then took the deeds.

It is clear, therefore, that there was no delivery until the 28th; nor was there then unless the papers were taken with the knowledge and assent of Mr. McGee, and with the intent to deliver them. Again he testified that some time after Father Crumley was there—

"Father spoke up, and said he didn't know as he would give me the Devine place. He said James had ought to get more. He said there would be enough left to give him what he wanted without touching any of the land."

This conversation took place after he had taken the deeds up stairs.

"*Q*. Did he say anything about when he fully decided to give you the Devine place?
"*A*. No. Some one came down stairs, and stopped the conversation."

Mr. McGee was a man of strong will, and of more than common energy and activity. He had spent his life in amassing a competent fortune, to which the labors of his children had contributed, and there is reliable evidence that he desired and intended to retain control of it during his life. But, aside from this, 10 witnesses testify that Richard stated, shortly after the discovery that the papers had been taken, that the deeds had not been delivered to him. These witnesses are Thomas McLaughlin, Miss Wylie, Sylvester P. Hicks, James McGee, Mary Bergin, Christopher Bergin, John S. Bergin, John McGee, Benjamin E .Burt, and Rose Ann Bergin. Four of these witnesses had no interest in the result of the litigation. Richard and James went to see the witness Burt, an attorney at law, on the 18th of March,—three days after Mr. McGee's death,—to ask counsel. Richard stated to him that his father had made a deed, which he had put away, and John had broken in and taken. He then asked Richard if the deed had ever been delivered by his father to him after it was executed, and Richard replied, "No." He said, after it was signed; his father told him to put it away with his father's papers, and that he did so. There is testimony on the part of the complainant contradictory to these witnesses. But we are of the opinion that the non-delivery of the papers is established by a clear preponderance of evidence.

It is unnecessary to discuss the mental condition of Mr. McGee, and the alleged incompetency to execute the papers. We may note the testimony of Father Crumley as bearing upon both the question of delivery and the question of his mental condition. This conversation

occurred nine days after the papers had been signed. He then told Father Crumley that he had not made a deed of the Devine place to Richard, and did not believe it until the papers were brought from his bureau, and the deed shown him. Had he disposed of his property as he contemplated, and if his mind was in condition to understand it thoroughly, it is indeed singular that in so short a time he should have forgotten this conveyance.

It follows that the disposal of his property contemplated by him was never completed, and that the relief asked by the defendants in their cross-bill must be granted, and all of the deeds purporting to have been signed and executed on the 18th day of February, including those to the defendants Rose Ann Bergin and George McGee, and the discharge of the mortgage on Mary's land, must be set aside.

Decree of the court below will be reversed, and decree entered in this Court in accordance with the above opinion. We think it equitable that the costs of both courts should be paid out of the estate.

LONG, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.